818

[Civ. No. 15532.   Second Dist., Div. Three.   Mar. 28, 1947.]

MINNIE E. SEAMANS, Appellant, v. STANDARD HOTEL CORPORATION (a Corporation) et al., Defendants; EDWARD M. COFFMAN, Respondent.

W. P. Butcher for Appellant.

Griffith & Thornburgh for Respondent.

WOOD, J.—This is an action for damages for personal injuries sustained by plaintiff when she fell while descending a stairway of a hotel.  Edward M. Coffman, the owner of the hotel, was the only defendant appearing.  In a trial without a

jury, judgment was for defendant, and plaintiff appeals therefrom.

On March 12, 1944, about 8:15 a. m., plaintiff, who was a paying guest at the Lobero Hotel in Santa Barbara, had gone into the basement for the purpose of asking the porter to go on an errand for her. He was not there and, the automatic self-serving elevator in which she had gone to the basement being in use, she walked along the basement corridor and through a door into a patio on the east side of the hotel, intending to go upon the street. The patio is higher than the floor of the basement, and access to the patio from the basement is gained by going through a double door and ascending a brick stairway consisting of three steps, that is, three treads and four risers. The tread of each step is about 5 feet in length and 15 inches in width, and each riser is about 6 inches high. Each door of the double door is 2½ feet wide, and the lower 31 inches of each door consists of wood panels, and the part of each door above the panels consists of eight panes of glass. The doors open into the corridor of the basement, and when the doors are closed the inside face of each door is flush with the riser of the bottom step; in other words, the 6-inch upright part of the bottom step (the riser) extends from the floor of the corridor in a straight line with the inside face of the closed door, and no part of the tread of the bottom step is in the corridor and the floor of the corridor is about 6 inches below the bottom of the door. A person using the stairway to go from the patio to the basement corridor would descend the three steps to the doorway, open the door, and then immediately step down about 6 inches onto the floor of the corridor. After plaintiff had gone into the patio, she went to the gate between the patio and the street, but finding the gate locked she returned to the stairway, intending to go to the basement corridor. She descended the three steps to the closed double door, then opened one of the doors and, while stepping into the basement corridor, fell to the floor, sustaining severe injuries.

The floor of the corridor is also made of bricks. The wall of the corridor facing the patio is 33 feet in length, and the double door is in the middle of the wall. On each side of the double door, and as a part of the doorway framework, there is a french door about 18 inches wide, of the same height and construction as the double door, with four panes of glass in it above the 31-inch wooden panel. Over each door there is a

glass transom. At the side of each french door, and about 3 feet therefrom, there is a window about 7′ x 7′ containing 28 panes of glass. A large recreation room in the basement, in which there were 20 cots, was being used at the time of the accident as sleeping quarters for men in the armed services.

It was alleged in the complaint, in part, that while plaintiff was descending the steps, leading from the patio into the hotel building, she passed over the perpendicular drop-off which is adjacent to said doorway, and as a proximate result of defendants' negligence slipped and fell headlong and was severely injured; that the defendants negligently "permitted the said entrance and or doorway and or perpendicular drop-off to be and remain in said dangerous, defective, and hazardous condition; that said defendants at said time and place as aforesaid carelessly and negligently failed to warn and advise guests and patrons and business invitees of said hotel among whom was the plaintiff, of the existence and presence of said perpendicular drop-off which was maintained in immediate proximity to said entrance. . . ."

At the close of plaintiff's case, her counsel made a motion to amend the complaint by adding the words "or to illuminate" after the words "presence of" in the part of the complaint just quoted, so that the complaint would read, at the place amended, that said defendants "negligently failed to warn and advise guests and patrons and business invitees of said hotel among whom was the plaintiff of the existence and presence of *or to illuminate* said perpendicular drop-off which was maintained in immediate proximity to said entrance. . . ." (Italics added.)

The court denied the motion, stating in substance that the question of illumination was not involved, and that it 'was purely a question as to whether there was a hazardous condition. The court had also stated during the trial, in sustaining defendant's objection to evidence regarding lack of illumination, that since plaintiff had alleged special acts of negligence she was limited by them.

. Appellant (plaintiff) contends that the original allegations to the effect that defendant negligently failed to warn and advise the guests of the existence of the drop-off were sufficient to entitle her to offer testimony as to lack of illumination, but contends further that if such allegations were not sufficient she should have been permitted to amend. She also contends that the court erred prejudiciously in refusing to

consider the evidence as to lack of illumination, which evidence was received subject to a motion to strike but which was not expressly stricken out. She argues that it is obvious from the ruling of the court, to the effect that illumination was not involved, that the court refused to consider such evidence.

During the early part of the trial the plaintiff testified that it was a dark, foggy morning. Counsel for defendant then moved to strike out that statement on the ground that it was not responsive, and the motion was granted. Thereupon, counsel for plaintiff said: ''I am going to ask leave at the conclusion of this case to file an amended complaint to conform to proof by alleging as a further ground of negligence the absence of proper illumination.'' Counsel for defendant then said: ''You are bound by the Complaint. If there is going to be an Amendment, let him dismiss and re-file. We don't have to come in here and defend, not on any other ground.'' Plaintiff's counsel said: ''I will just simply make that statement. My motion hasn't been made yet.'' The court said: ''Let's arrive at that, gentlemen, when we get there.'' On cross-examination of plaintiff, in response to a question as to whether she stepped into the corridor without looking, she said: ''Oh, I looked all right, but I couldn't see anything. It was because it was so dark. There was no light there and it was a dark foggy morning.'' Then counsel for defendant said: ''Dark, foggy morning, so you couldn't see anything.'' Subsequently, on cross-examination, he exhibited to her a written statement signed by her, and called attention particularly to a part thereof which recited that ''the weather was clear and sunny.''

Plaintiff's sister, who also lived at the hotel, went into the basement within a few minutes after the accident. She testified: ''It was a dark morning. You see, we had fog all that year, a great deal of it and it was dark when I went down and when I entered that corridor. I had to get used to the light and I had to be shown really where to go, and when I got there, I could just see. Q. [by plaintiff's counsel] Was there a light? A. No, there was no light burning in the hall.'' Then the following occurred: ''MR. THORNBURGH [counsel for defendant]: I object to that on the grounds that it is incompetent, irrelevant and immaterial. Move to strike it out. MR. BUTCHER [counsel for plaintiff]: On the grounds that it is not embraced within the issues? MR. THORNBURGH:

That is correct. MR. BUTCHER: May I ask leave, your Honor, to put it in subject to a motion to strike. MR. THORNBURGH: Yes. THE COURT: Yes, subject to a motion to strike. Q. There was no light, no illumination in the corridor? A. No, none whatever. An order is given to conserve light.'' Subsequently, on cross-examination, counsel for defendant exhibited to the witness, plaintiff's sister, a written statement signed by her, and called attention particularly to a part thereof which recited that, ''It was damp outside; the sun was shining, but not strong.''

At the close of plaintiff's case when her counsel made the motion, as above stated, to amend her complaint, counsel for defendant objected to the motion on the ground that ''we prepared for trial confronted by one thing in the complaint filed many months ago as being a dangerous condition, namely, a drop-off''; that defendant had not prepared any evidence on illumination; and that if plaintiff intended to amend she should have sought such permission previously. Counsel for plaintiff replied that he had assumed, until the ruling of the court in the morning session of the trial, that the words in the complaint, ''failed to warn and advise the guests,'' would be broad enough to include the question of visibility. The court said: ''Which is elementary, that when you plead special facts of negligence, you are confined and limited to them.'' Counsel for plaintiff then said that an objection to his question regarding visibility had been sustained; that on cross-examination counsel for defendant had brought out whether it was light or dark; that since plaintiff had shown an absence of a light in the hallway, she should have the right to make her complaint conform to the proof; that, if counsel for defendant had been taken by surprise, plaintiff was willing to stipulate that the case be continued for such time as might be required by defendant to prepare for trial under the amendment. Counsel for defendant said: '' [T]he only thing here is failure to warn and advise plaintiff of the existence of said perpendicular drop-off. That's the only allegation in the complaint. Now I didn't bring up the subject of light. The two,—the plaintiff testified it was a dark, gloomy day and the sister testified that it was the same sort of a day. I introduced their statement that it was a clear sunshiny day, the one being admission against and the other as impeachment. Now it doesn't seem to me that that changes it.'' He said further that plaintiff relied upon a particular act of negligence and she is bound

by it, and that he resisted the motion to amend. The court said: "I believe that was the situation. The court is inclined to view motions to amend to conform to proof with some large degree of leniency, but I don't believe that the question is involved. I think it is purely a question of whether there was an imperfect and hazardous condition and I am not convinced, after listening, that it is a question of lighting and illumination and for that reason the motion is denied."

Thereafter, defendant called the weather observer as a witness, and asked her: "What kind of a day was it [referring to the day of the accident]?" Counsel for plaintiff objected to the question on the ground that it was "immaterial, in view of the ruling of the Court—that that was not within the issues of this case, the question of visibility. . . . We were not permitted to . . . keep in evidence on that subject, and it is an attempt to impeach the witnesses of the plaintiff's case on an immaterial matter." Counsel for defendant said: "It is a definite statement by your own plaintiff." THE COURT: "Yes. It is at least admissible for the purpose of impeachment. MR. BUTCHER: On an immaterial matter. MR. THORNBURGH: I don't think it is immaterial; that's her own excuse for not seeing or doing anything else—it was a bad day." The court overruled the objection, and the witness said it was a clear day. It was stipulated, at the close of the evidence when the judge took the case under advisement, that he might view the premises, but the record does not show whether or not he did it.

The court found that the stairway, leading through the double doors to the floor of the basement corridor, and the doorway with the two doors were not, either together or singly, defective or dangerous or hazardous to persons using them; that the presence of said stairway, doorway and doors, and the type of construction of the same, "are open, apparent and patent to anyone using the same, either for ingress to or egress from said basement corridor"; that "plaintiff's fall was not caused by any dangerous or defective or hazardous condition existing in the stairway and doorway or in either of them, or in any other facility of said hotel, nor was it caused by any negligent act or conduct on the part of defendant"; that her fall and injuries were caused by reason of her "negligent and careless failure to look where she was walking and stepping," and that her negligence proximately caused the injuries received by her.

Plaintiff contends, as above stated, that the court erred prejudicially in refusing to consider the evidence introduced

by her concerning the lack of illumination in the hallway. Counsel for defendant asserts that ''it must be' presumed that the Court considered the evidence on illumination produced by appellant as well as the other evidence on that subject.'' In this case, since the record shows that the trial judge ruled that the question of illumination was not involved, it must be assumed that, in conformity with his declaration, he regarded the evidence concerning a lack of illumination in the hallway as immaterial to the issues, and that he did not consider it.

■ It is true, as defendant asserts, that if specific acts of negligence are alleged, rather than negligence generally, evidence of acts of negligence other than those specifically alleged would be immaterial and not within the issues. ■ Plaintiff made a specific allegation concerning the alleged structural defect in the stairway and doorway, namely, the drop-off, but she made a general allegation as to negligence in failing to warn the guests of the existence of the alleged structural defect, that is, she did not specify in what particular manner defendant failed to warn them. Evidence regarding a structural defect other than the one alleged would have been immaterial and not within the issues, but evidence to the effect that defendant failed to warn the guests of the existence of the alleged defect, by reason of a lack of illumination in a dark hallway, was material and within the issues. A warning that a six-inch step-down exists in a dark hallway just inside an inward swinging door which is at the bottom step of an entrance stairway to a public building might be given in various ways. Illuminating the perpendicular drop-off would have been one way to warn the guests. Plaintiff was not required to designate specifically in her complaint the various ways in which such a warning could properly be given, and then allege particularly as to each kind of warning so designated that defendant failed to give it. Plaintiff's cause of action included a combination of the alleged negligence of defendant in permitting a specifically described hazardous defect in the building to exist and of his alleged negligence in failing to warn the guests of its existence. The evidence regarding a lack of illumination was material and within the issues presented by the complaint, and should have been considered by the court.

■ Under the view taken by the trial court, that the allegations of the complaint were insufficient to present an issue as to lack of illumination, the trial court should have allowed plaintiff to amend to allege that defendant failed to illuminate

the drop-off. Defendant's objection to evidence regarding light was upon the sole ground that it was immaterial because it was not within the issues. Plaintiff's counsel stated to the trial court that he had assumed, until the court ruled otherwise, that the allegation of the complaint regarding failure to warn the guests was broad enough to include the question of visibility, and suggested that if defendant was taken by surprise the case be continued to give him an opportunity to prepare for trial under the amendment. It does not appear that a continuance for such purpose would cause a great delay or prejudice the rights of defendant. After counsel for defendant had objected to evidence on the subject of light, and after the objection had been sustained, he elicited testimony from plaintiff to the effect that there was no light and that it was a dark morning; he presented evidence, on cross-examination of plaintiff and her sister by reference to their written statements, to the effect that the sun was shining that morning, and that the wall, in which the doors were located, faced the east and had a great many panes of glass in it; and by calling the weather observer as a witness, he presented evidence that it was a clear day. He asserts that he did not bring up the subject of light, but that he introduced evidence as to written statements of plaintiff and her sister to impeach their testimony that it was a dark day. The presentation of evidence by defendant as to visibility was inconsistent, of course, with his objection that such evidence was immaterial. The result was, however, that the condition with respect to light outside the hallway was rather fully presented by defendant. Even if the morning was clear and the sun was shining into the hallway through the glass panes on the east wall, as argued by defendant, that circumstance would not be determinative that the space in the hallway below the 31-inch baseboard and panels was not dark, particularly the space below the threshhold referred to as a drop-off. It would seem that the matter of light inside the hallway at that particular point would be especially important, since the stairway and floor, both being made of bricks, might create a deceptive appearance that the bottom step and the floor of the hallway were on the same level. If the sun should be shining brightly, it would seem that such deception would be more probable, since the space in the hallway below the 31-inch baseboard would undoubtedly be in the shadow of the baseboard at that time in the morning, and an interval of time would be required for the eyes to become

adjusted to the different condition of light at the drop-off. There was substantial expert testimony that there was a defect in the construction,—a building contractor of extensive experience in constructing large public buildings having testified that the location of the door in relation to the steps is "entirely wrong," that the customary method of construction is to swing the door to the.outside, but if it is desired to swing it inside the building there should be a step extending inside from the threshold for a distance equal to the width of the door. The circumstances relative to the alleged defective construction of the stairway and door were such that the evidence presented by plaintiff as to visibility within the hallway should have been before the court for its consideration, in order that plaintiff might properly present her case.

In the case of *Marr* v. *Rhodes,* 131 Cal. 267 [63 P. 364], it was said, at pages 270-271: "It can very rarely happen that a court will be justified in refusing a party leave to amend his pleading so that he may properly present his case, and obviate any objection that the facts which constitute his cause of action or his defense are not embraced within the issues or properly presented by his pleading." If a delay had been caused by the amendment the court could have required an immediate amendment and imposed terms commensurate to the time and expense of the continuance.

In the case of *Hanna* v. *Hirschhorn,* 112 Cal.App. 438 [296 P. 891], wherein the plaintiffs sought damages for breach of contract, the time specified in the contract for performance of certain conditions necessary to consummate the transaction had expired, and plaintiffs pleaded "that the time for performance was extended." The question on appeal was whether the trial court should have permitted plaintiffs to amend their complaint by alleging facts which might have constituted a waiver of the provision in the contract that the conditions were to be performed on a certain date. The trial court had denied plaintiffs' motion to amend. In reversing the judgment for defendant therein, it was held (p. 440) that ordinarily waiver must be pleaded specially, but since plaintiff had pleaded an extension of time it should have been manifest to defendants that plaintiffs relied upon an express or implied extension of time within which to comply with the contract; and that (p. 441) the pleading had put defendants on notice that "by reason of some unspecified acts or declarations of defendants, plaintiffs asserted a right to perform the conditions provided

for by the contract at a date subsequent to that specified therein as a limit for such performance.'' In the present case the allegation that defendant negligently failed to warn the guests of the drop-off should have placed the defendant on notice that plaintiff intended to prove that defendant failed to warn the guests in all the respects in which he might reasonably have been expected to warn them; and, under the view of the pleadings taken by the trial court, the plaintiff should have been permitted to amend her complaint.

The court found that plaintiff's negligence was the sole proximate cause of the accident, and this finding is relied upon by respondent as furnishing a separate ground for affirmance of the judgment. We are not satisfied to accept it as determinative of the case. The question whether plaintiff was guilty of contributory negligence was one of fact. The finding against plaintiff upon this issue was made without considering whether the failure to illuminate the location was a negligent omission. If upon a retrial the court should find that the absence of illumination constituted negligence, it might also find that such negligence was the sole proximate cause of the accident, adopting the theory that if the step had been illuminated plaintiff probably would not have fallen. The issue of contributory negligence must be redetermined upon a trial had in accordance with the views hereinbefore expressed.

The judgment is reversed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 26, 1947.